Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, everyone. We will take the cases up in the order in which they appear on the docket. The first five cases this morning have previously been submitted on the brief, so we will proceed directly to United States v. Carter. You may proceed. Thank you, Your Honor. May it please the Court. James Flynn on behalf of the United States Court of Appeals for the Ninth Circuit, I am pleased to present the case of Ms. Carter. Ms. Carter was convicted by two errors that separately and together compounded to diminish her ability to present her defense of duress. The first error was a jury instruction on that self-defense, excuse me, on that duress defense, and it told the jury to consider Ms. Carter's duress defense from the perspective of a person of reasonable in circumstances that included what we all agree was Ms. Carter's infirmity, the experience of living with schizophrenia. Because the district court got that legal principle backwards, the jury instruction was erroneous. Was there an objection to the instruction? There was a set of competing instructions offered by the parties. The only difference was this single sentence that's at issue now. The district court received filings from the parties with those two different instructions. The parties identified an initial charge conference, charge discussion, that there was a dispute as to the specific language. The district court adopted one of the two alternatives, issued it to the parties as a draft, and the parties didn't make further argument on that. Wasn't there a comment that something along the lines that counsel accepted the instructions? There was a comment from defense trial counsel that defense accepted the written instruction, the draft that the district court had circulated after the party said lodge the instructions with the alternatives and raised the issue of a written, excuse me, a language dispute with the district court. So why should we not see that as a waiver? Your Honor, I think the better way to read that comment by defense counsel is that the party said raise the legal issue with the district court. The district court had adopted one of the two alternatives. Well, the district court adopted sort of both, right? I mean, included the language of considering the defendant's particular circumstances and then also included the person of reasonable firmness language. It seemed to be a hybrid of what both parties had requested. I see how Your Honor sees it that way. I would disagree. I think that there were two options. One omitted the sentence at issue and one included the sentence, but I think we're talking about the same thing ultimately. I read the comment about accepting the instruction from defense counsel as saying we've raised this legal dispute. Your Honor has resolved it. We accept that the instruction is written, meaning that we don't have a further comment on how the instruction is written. Wouldn't you preserve your objection at that point? You know, we're preserving the objection to this version and just to make it clear? Your Honor, I think it wasn't necessary to do so because to preserve the objection, we're already talking about an objection that has been made and raised with the district court. So I think it might have been cleaner to repeat the objection, but as I think the question recognizes, it was already lodged and that was sufficient to preserve it, even if it wasn't ideally clean. Well, what is wrong with the way that the district court melded the two versions of the instruction? Sure, Your Honor. So the district court did one thing right, which was to instruct the jury that they could consider the defendant's particular circumstances, but then in part undid that correct incorporation of the law by telling them to restrain that consideration to a person with reasonable firmness. And I'd give a similar example, which is sort of like instructing a jury to consider a person of reasonable eyesight, where one of the circumstances facing that person is that they're blind. There's a fundamental incompatibility there. You're telling the jury that they can take into consideration some circumstances, but then you're saying in this narrow category of circumstances, you need to consider it from a person of reasonable firmness, not a person. Perhaps I misremember the record here. You speak of Ms. Carter as having schizophrenia. I thought that was disputed. Did I miss something? Yes, Your Honor. There was a dispute among the party's experts about the schizophrenia diagnosis and in particular about whether Ms. Carter was experiencing the symptoms of that schizophrenia at the time of the charge defense. Oh, so when you speak of the known disability, that's really not complete, is it? You got it out there, but it's not necessarily binding. Is that correct? Understood, Your Honor. I'm sorry if I misspoke in that regard. What I meant to say was that the parties agree that if the jury found that Ms. Carter was experiencing schizophrenia, that there was that diagnosis, that that is a kind of infirmity. That's the language the government uses. So I didn't mean to suggest that the government concedes the diagnosis or the symptoms. Thank you for clarifying that. Your Honor, I'll touch briefly on harmlessness. I did want to reserve three minutes. I've got a few minutes left here. The government doesn't address their burden or harmlessness, assuming there was an instructional error here. And they cannot show that the error was harmless beyond a reasonable doubt. There was substantial evidence about the schizophrenia. As Your Honor just noted, it was disputed, but heavily disputed, and challenges to the methods used by both parties' experts. And this is a classic kind of credibility issue that a jury should have been able to consider and then implement through jury instructions that allowed them to take into consideration the important factor that Lopez sets out. I point the court to Behrchild, where this court explained that where there's a credibility issue and a misinstruction that misdirects the jury into what factors they can consider, that is a prejudicial error that requires a new trial. That's 947F3 at page 11 and 48. So before we would get to that analysis, we would have to conclude that the instruction was erroneous. And it seemed that it tracked the Ninth Circuit model instruction and also the language of Lopez. So how did we find that it was an erroneous instruction? Yes, Your Honor. So I think Lopez guides us through that. And I acknowledge that the language was taken from the decision in Lopez. As this court has explained, language lifted from a court decision is sometimes a correct statement of the law, the snippet taken from a decision. But it is not always, and a jury can be misled by a small snippet of the case law. So what Lopez tells us is there's this concept called reasonable firmness that's language drawn from the model penal code. And the circuits have split about what can be considered in that reasonable firmness analysis. This court circuit has said that experiences like battered women syndrome, or here schizophrenia, which intersects with the abuse from Ms. Carter's abuser, those experiences can inform a jury's how a person would perceive threats from their abuser, how they would respond, whether they would seek help or try to resist those threats. That's this court's interpretation of that language, reasonable firmness. But as this court has chronicled, other sister circuits have disagreed, have found that reasonable firmness bars consideration of those factors. So a jury instructed to apply a reasonable firmness standard in isolation, without all of this explanation from Lopez that I've been discussing, would be facing the same question that Your Honor is faced when the circuit split arose, to determine what to consider and whether reasonable firmness allows them to consider Ms. Carter's schizophrenia and how that colors her perception of reality. This court has said they should be able to do that, but the district court here didn't give them that opportunity. And I think the only commonsensical understanding of the term reasonable firmness in a jury instruction, divorced from all that legal analysis, is that a juror would think reasonably firm means doesn't have this mental disorder that I am supposed to be able to consider. District court's telling me not to. That's my time. I see unless Your Honors would like to ask any other questions about this, I'll sit down and return. Okay, you can reserve the remainder of your time for rebuttal. Thank you. Good morning and may it please the court, Elizabeth Douglas on behalf of the United States. So I want to first address the court's questions about whether the issue on the objection to jury instructions was made below and if it was made, whether it was forfeited. The government's that it was waived. At the charging conference, there were three versions of the jury instructions presented by the parties. The government had argued that the model instruction should be applied. The defense had argued, no, there should be the model instructions plus one sentence. And in the alternate, the government had said, well, you could take the defense's option and add this additional sentence that's now being disputed before this court. The defense never objected to that alternate additional sentence that was added. They did not object in their papers. And then when it was presented by the district court in the tentative, the government reiterated its objection and said, we think that the model instruction should apply. And the defense said, we accept this instruction. So they affirmatively accepted it. And at the very least, this is forfeiture because the district court was not on notice that the defense believed that the last sentence that is now dispute was an objection by the defense counsel below. And that is why the government contends that this error is waived and if not waived, at the very least forfeited and should be reviewed solely for plain error. So turning to whether this instruction was erroneous, it wasn't. The instruction correctly tracks the language of Lopez, which instructs us to have the jury consider the particular circumstances of the defendant and then whether a person of reasonable firmness in those circumstances would have perceived this threat. And if you look at Lopez, it's all about the perception. So here the dispute was whether the defendant's perception of a threat actually existed and whether it was this hallucination or delusion caused by schizophrenia. And by looking at the counsel's argument below, you can see that everyone assumed that schizophrenia could be considered once you got to the threshold question of if defendant did have schizophrenia. The government, in its opening close after discussing the elements of the offense and turning to the rebuttal, argued about whether or not the defendant had schizophrenia. It did not argue that the jury could not consider schizophrenia. Then when defense counsel focused her closing on the jurist defense, she was arguing again about the fact set in the defense's theory that defendant had schizophrenia and thus perceived this threat. And again in government's rebuttal, the government was again focusing on the question of whether defendant had schizophrenia and if she did, what the impacts were. So the jury walking into the jury room had instructions that said, you should be considering the defendant's particular circumstances. And they'd gotten those instructions after hearing, or actually they were pre-instructed, they then had heard significant argument all about whether or not the defendant had schizophrenia and if she did, what effects were. And so the idea that, I think the assumption here that defense is making that the jury completely ignored defendant's schizophrenia is not supported by the record when looking at the evidence before the jury and the arguments that were made. So I think that the instruction was certainly not wrong under any standard, whether or not you consider it waived or forfeited. As to the second argument, the rebuttal? Yes. So turning to the rebuttal, there are two separate issues and I want to be clear about the two separate issues because the defense raises two objections before this court. One is a burden shifting argument and one is about whether or not there were comments that denigrated the defense. Below, defense counsel only objected to this denigration, the second issue, and therefore the burden shifting should be reviewed in the government's position for plain error because it was not objected to specifically below. So taking that first issue under plain error, burden shifting, the government's position is that there was no burden shifting. The entire rebuttal of the government was about the jurist's defense. The government had made clear in its opening close that it had the burden on the offense itself and had walked through every element and had reiterated multiple times that it had the burden. The defense's closing then spoke about mainly the jurist's defense after conceding that the defendant had committed the offense itself and so by the time the government stood up for the rebuttal, the key issue was the jurist and the government correctly stated that the defense bore the burden on the affirmative jurist and so it was not error to say that the defense bore its burden when talking solely about the defense and it certainly wasn't plain error. And then to the second issue about whether or not the government's rebuttal denigrated the defense, the defense counsel here relies solely on the case of United States v. Sanchez and Sanchez itself is relatively terse about this issue. It speaks a lot about vouching and then says also denigration of the defense is proper. Subsequent cases indicate that Sanchez's prohibition is about making an ad hominem attack on defense counsel and attacking the integrity of officers of the court. The rebuttal here did not do that. It did not imply that the defense counsel were lying. You can, as a prosecutor, say that a defendant who is testified is incredible. This court has also allowed prosecutors to comment on the defense theory of the case. You can call the defense theory a fantasy. You can call the defense case smoke and mirrors. Again, you can call it a figment of defendant's imagination and so suggesting that this defendant was lingering and feigning as there was evidence put forth to the jury that defendant had been malingering and feigning her mental illness was an appropriate thing to happen in the rebuttal. And then the comments about sort of the inflammatory nature, subsequent cases in this circuit have suggested that the prosecutor can't suggest that by acquitting defendant they might let a child killer on the loose or otherwise cause further harm. And that certainly did not occur here. And there are a line between making a rebuttal argument that challenges the defense's theory, which is what I understand you're saying occurred, and one that attacks the defendant's character. So it seems here that some of the remarks came pretty darn close to that in calling the defendant a liar. And if a defendant has testified and put their credibility at issue, the prosecutor is allowed to call the defendant's credibility into question. In a case cited in our brief, C.S. Rood, 88 F. 3rd, 1538, the prosecutor called the defendant a conman, a charlatan, and a liar over 90 times. And this court found that that was acceptable. And here the defendant testified, and there was evidence before the jury that she had, in fact, lied. She admitted she lied. Her defense expert admitted she lied. And so, therefore, suggesting that she was lying was an appropriate thing to do in rebuttal. What's your case for that? That was United States v. Rood, R-U-D-E, 88 F. 3rd, 1538. It was at page 1548, Ninth Circuit, 1996. Okay. If there are no further questions, the government respectfully asks this court to refer. All right. Thank you. I'm done. Okay. Thank you, counsel. Thank you, Your Honors. I'll start where we just left off, perhaps. And note that the case law does allow the government to accuse a defendant of having lied about the crime. There are two things here that went well beyond that smaller principle that allows certain comments by a prosecutor about a defendant's credibility. One, I think Your Honor just addressed, which is that a campaign can be waged so thoroughly and so broadly that it begins to attack the defendant's character, character of truthfulness, as well as the integrity. I think that's what we see here, where across these several pages of the thought experiment for the jury, the prosecutor asked them to consider really not what Ms. Carter was saying, but what her experts and counsel were saying, what the diagnosis was, the symptoms she was experiencing. On 1 ER 35, this is the explanation of the symptom of a blunted affect. That was a diagnosis and a symptom provided by Ms. Carter's expert. To say that that's too convenient, it's a story, they're boxed in, that's comments on the expert's credibility and her integrity. That goes well beyond what's permissible about a comment about the defendant. And then the second issue is the inflammatory thought exercise, asking jurors, not commenting on the evidence, making argument to the jurors, but asking them to sit in the shoes of the defendant. And starting from the moment the defendant walked into LAX, thinking through the lies the defendant must have come up with, colluding with her defense counsel and expert to come up with the diagnosis that the government said was a lie. And then on 1 ER 36, the comments praised in their terms, describing the entire defense team, quote, it's too convenient. This is the best they can do with what they have. In my last 10 seconds, I just wanted to point the court to two cases on the objection to the jury instruction. The first is Shorter v. Baca, 895 F3rd, that's page 1183, and Costin v. Ngallama, 13 F4th, 729, page 732. And those both explain that an objection to a jury instruction need not be formal. It need not be a pointless formality, as we were discussing earlier. And it can be lodged as an alternative jury instruction. It need not be separately set out as a separate objection, so long as the issue is called into focus. Thank you, Your Honors. All right. Thank you very much. United States v. Carter is submitted.
judges: WARDLAW, SMITH, BADE